UNITED STATES of America,
Plaintiff–Appellee,

v.

Martha Lucia ORTIZ BARRERA,
Gustavo Adolfo Arana–Molta,
Defendants–Appellants.

No. 89–5288
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Jan. 28, 1991.

Arthur Joel Levine, Ft. Lauderdale, Fla., for Barrera and Arana–Molta.

Dexter Lehtinen, U.S. Atty., June Seraydar, Linda Collins Hertz, June Serayda, Anne Ruth Schultz, Asst. U.S. Attys., Miami, Fla., for U.S.

Before KRAVITCH, ANDERSON and EDMONDSON, Circuit Judges.

PER CURIAM:

Appellants Martha Lucia Ortiz Barrera (Barrera) and Gustavo Adolfo Arana–Molta (Molta) were convicted of failing to report the transport of over $10,000 in currency out of the United States. In this appeal, appellants contest a five point increase of their base offense level under United States Sentencing Guidelines § 2S1.3(b)(1). Appellants allege insufficient evidence of their knowledge that the funds in transport were "criminally derived property." We hold that an upward adjustment in the base offense level under § 2S1.3(b)(1) is appropriate in this case.

## I. FACTS

On January 13, 1989, Appellants Barrera and Molta pled guilty to violations of 31

U.S.C. §§ 5316(a)(1)(A) and 5322(a), 31 C.F.R. § 103.23, and 18 U.S.C. § 2 for failure to file a United States Custom Form 4790 in connection with their transportation of $40,725. Subsequent to the discovery of the currency, both appellants waived their rights and made written and oral statements.[1]

Barrera stated that an individual named Jacobo Macera had given her the currency to take to her sister in Colombia. She signed a written statement that she had deposited money from Macera into her account at Barnett Bank and would give him endorsed checks with which to make withdrawals. With respect to the $40,725 in transit, she admitted in her written statement that "it [was] logical to assume that the money was drug related and that was why I was afraid to report it to the Customs Agent."

In addition to signing a written statement admitting his guilt for illegal transport of currency, Molta conceded that he had been involved in money laundering activities over the past one and a half years. The government agents obtained evidence that Molta had engaged in a pattern of illegal activity known as "structuring" deposits, which Molta later confirmed. Molta stated that he and Barrera were to receive $250 each for the transportation of the $40,725, adding, "I have never been told the money is drug related but have assumed that it is [,] due to the nature of the business."

In district court, appellants agreed with the Probation Department's recommendation of a base offense level of thirteen under the United States Sentencing Guidelines § 2S1.3(a)(1),[2] but they objected to the five point upward adjustment under § 2S1.3(b)(1). Appellants argued that the evidence did not support a finding that they knew that the funds in transport were criminally derived property as required by subsection (b)(1). The district court rejected appellants' argument and held that the government had met its burden of proof under subsection (b)(1) by a preponderance of the evidence. The court added five points to the base offense level of thirteen pursuant to subsection (b)(1) and subtracted two points for acceptance of responsibility, resulting in a final offense level of sixteen for each appellant. The court sentenced Barrera to twenty-one months' imprisonment and Molta to twenty-four months' imprisonment. The court further sentenced each appellant to two years' supervised release and a $50 special assessment. Appellants are currently incarcerated.

## II. DISCUSSION

 Section 2S1.3(b)(1) of the Sentencing Guidelines provides for a five point increase in the base offense level of five points "[i]f the defendant knew or believed that the funds were criminally derived property." Appellants argue that although the language of § 2S1.3(b)(1) is "knew or believed," this section only increases the base offense level if the defendant actually knew that the funds were criminally derived. Prior to appellants' sentencing, the commentary to § 2S1.3(b) stated that "[t]he offense level is increased by 5 levels if the defendant *knew* that the funds were criminally derived" (emphasis added).[3] From this language, appellants conclude that the government must prove actual knowledge under § 2S1.3(b)(1). Appellants admit that they had "reasonable belief" that the money they were transporting was related to drug activity, but they contend that "reasonable belief" does not rise to the level of actual knowledge.

---

**1.** We recognize that the written statements, signed by appellants, were translations and transcriptions from Spanish to English of appellants' oral statements. *See* Appellant's Brief at 5.

**2.** Section 2S1.3(a)(1)(C) states:
 Base offense level: 13, if the defendant: reasonably should have believed that the funds were criminally derived property.

**3.** This version of the commentary is relevant to appellants' case because it was in effect at the time of their sentencing. *See infra* Note 4 for a description of the subsequent amendment to the commentary.

An upward adjustment in base offense level is clearly appropriate in this case. Section 2S1.3(b)(1) literally encompasses "knowledge or belief" despite the language of the pre-amendment commentary. Where the terminology of a statute is clear, we do not need to rely on the commentary for its construction.[4]

Sections 2S1.3(a)(1)(C) and 2S1.3(b)(1) of the Sentencing Guidelines focus on a defendant's state of mind and sanction culpable intent, whether or not the defendant's belief that he was transporting criminally derived property is in fact true. The Sentencing Guidelines § 2S1.3, Application Note 2, provides that "[it] is possible that a defendant 'believed' or 'reasonably should have believed' that the funds were criminally derived property even if, in fact, the funds were not so derived...." Therefore, appellants' belief that they were transporting criminally derived property requires both a base offense level of thirteen under § 2S1.3(a)(1)(C) and an adjustment upward of five levels under § 2S1.3(b)(1), even if criminal activity did not actually taint the funds at issue.

Upon review of the facts, we hold that the district court had sufficient evidence from which it could conclude that appellants believed that the funds they carried were related to illegal drug activity.[5]

Therefore, we hold that the district court was not clearly erroneous in enhancing appellants' sentences under § 2S1.3(b)(1).

AFFIRMED.

---

**4.** However, the 1990 amendment made two significant changes to the note and commentary following § 2S1.3 which support our interpretation of pre-amendment § 2S1.3(b)(1). First, the amendment added Application Note 2 which indicates that the defendant's belief alone is enough to warrant an offense level increase under subsection (b)(1):

> Subsection (a)(1)(C) applies where a reasonable person would have believed from the circumstances that the funds were criminally derived property. Subsection (b)(1) applies if the defendant *knew or believed* the funds were criminally derived property. Subsection (b)(1) applies in addition to, and not in lieu of, subsection (a)(1)(C). Where subsection (b)(1) applies, subsection (a)(1)(C) also will apply. It is possible that a defendant "believed" or "reasonably should have believed" that the funds were criminally derived property even if, in fact, the funds were not so derived (e.g. in a "sting" operation where the defendant is told the funds were derived from the unlawful sale of controlled substances). (emphasis added)

Second, the 1990 amendment changed the language in the commentary from "[t]he offense level is increased by 5 levels if the defendant *knew* that the funds were criminally derived" to "[w]here the defendant actually knew *or believed* that the funds were criminally derived property, subsection (b)(1) provides for a 5 level increase in the offense level" (emphasis added).

While the 1990 amendment does not apply retroactively to appellants' pre-amendment sentencing, it is relevant to the interpretation of pre-amendment § 2S1.3(b)(1). Although Application Note 2 and the amended commentary both indicate that the defendant's belief that he transported criminally derived property warrants a five point increase under subsection (b)(1), the 1990 amendment did not alter the language of subsection (b)(1). This indicates to us that the Guidelines were amended to reflect an original intent that a defendant's belief alone can trigger subsection (b)(1).

**5.** Furthermore, we find that the same evidence would support a conclusion that appellants also had knowledge of the drug activity.